UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
DLJ MORTGAGE CAPITAL, INC.,

                        Plaintiff,

  -against-

THOMAS KONTOGIANNIS, GEORGIA KONTOGIANNIS,
LISA DIPINTO a/k/a LISA KONTOGIANNIS a/k/a LISA
PALLATOS, ANNETTE APERGIS a/k/a ANNETTE
JOHNSON, CHLOE KONTOGIANNIS, ADAM DIPINTO,
ELIAS APERGIS, JOHN T. MICHAEL, MICHAEL A.
GALLAN, ESQ., TED DOUMAZIOS, ESQ., THOMAS F.
CUSACK, III, ESQ., STEPHEN P. BROWN, ESQ.,
STEVEN A. MARTINI, CARMINE CUOMO, COASTAL
CAPITAL CORPORATION d/b/a THE MORTGAGE SHOP
d/b/a CLEARLIGHT MORTGAGE, EDGEWATER
DEVELOPMENT, INC., GROUP KAPPA CORP., LORING
ESTATES LLC, PARKVIEW FINANCIAL, INC., CLEAR
VIEW ABSTRACT LLC, TRIUMPH ABSTRACT LLC,
BOND & WALSH CONSTRUCTION COMPANY,
INTERAMERICAN MORTGAGE CORP., CORINNE
MICHAEL, BLOCK 13434 DEVELOPMENT LLC,
CONAT REALTY LLC, PLAZA REAL ESTATE
HOLDING INC., and DOE's 1 THROUGH 100, inclusive,

                        Defendants.
-------------------------------------------------------------------------X

AMENDED
MEMORANDUM
<u>AND ORDER</u>
08 CV 4607 (ENV)(RML)

LEVY, United States Magistrate Judge:

        On November 13, 2008, plaintiff DLJ Mortgage Capital, Inc. ("plaintiff" or "DLJ") initiated this action by filing a complaint that stated numerous causes of action, all stemming from allegations that the many defendants (collectively, "defendants") caused DLJ tens of millions of dollars in damages through a complex mortgage-fraud scheme. In December 2008 and January 2009, plaintiff filed notices of pendency on thirty real properties in New York in connection with this action. On May 1, 2009, counsel for Edgewater Development, Inc.

("Edgewater"), Loring Estates LLC ("Loring"), Plaza Real Estate Holding, Inc. ("Plaza Real Estate"), and Annette Apergis ("A. Apergis") (collectively, the "moving defendants") filed a motion to vacate the notices of pendency. On May 14, 2009, DLJ and the moving defendants consented to my jurisdiction over the motion to vacate. See 28 U.S.C. § 636. For the reasons stated below, the motion is granted in part.

## BACKGROUND AND FACTS

Plaintiff alleges that, as part of their mortgage fraud scheme, the moving defendants used money they had stolen from DLJ to improve or purchase various real properties. (See Plaintiff's Memorandum in Opposition to Certain Defendants' Motion to Vacate Lis Pendens, dated May 15, 2009 ("Pl.'s Mem."), at 4.) There are ninety-five properties at issue in this case overall, and DLJ filed lis pendens[1] against thirty of them. (See Pl.'s Mem. at 1 n.1.) Defendants "seek an order vacating the notices of pendency wrongfully filed by DLJ, as well as costs and expenses occasioned by the filing and cancellation thereof, including the costs of this action." (Memorandum of Law in Support of Defendants' Motion to Vacate Notices of Pendency, dated May 1, 2009 ("Defs.' Mem."), at 2.)

In the scheme, according to DLJ, numerous individuals and corporate entities collaborated to steal "more than $50 million from DLJ in an elaborate and complex mortgage scam spanning several years. The scam involved faking at least 95 real estate and mortgage loan transactions . . . and then selling the bogus loans—by clever manipulation intended to make them appear legitimate—to DLJ" and others. (Compl. ¶ 2. See generally Compl. ¶¶ 1-4, 39-53.)

---

[1] The bench and the bar, and this order, use the terms "notice of pendency" and "lis pendens" interchangeably. See, e.g., United States v. Kramer, No. 06 CR 200, 2006 U.S. Dist. LEXIS 89034, at *31 n.11 (E.D.N.Y. Dec. 8, 2006) (Vitaliano, J.).

In its original complaint, DLJ alleged it "would have had a mortgage lien" on these ninety-five properties "but for the mortgage fraud." (Verified Complaint, dated Nov. 13, 2008 ("Compl.") ¶ 63.) Subsequently, DLJ filed lis pendens against thirty of the properties, which fall into four categories: (1) twenty-one parcels owned by Edgewater or Loring (collectively, the "Selling Entities"); (2) six parcels owned by Plaza Real Estate; (3) one parcel owned by A. Apergis (the "Glen Head House"); and (4) two parcels owned by defaulting defendant Carmine Cuomo (the "Carmine Cuomo properties"). (See Pl.'s Mem. at 1.)

Upon filing the complaint, plaintiff moved for attachment and for a preliminary injunction with a temporary restraining order to prevent defendants from dissipating the real property in dispute. (See Memorandum in Support of Motion for an Order of Attachment and Preliminary Injunction (with Temporary Restraining Order), dated Nov. 13, 2008.) Judge Vitaliano denied the motion for attachment in its entirety and denied the motion for a preliminary injunction with respect to all properties except the six Plaza Real Estate parcels. DLJ Mortgage Capital, Inc. v. Kontogiannis, 594 F. Supp. 2d 308, 332 (E.D.N.Y. 2009). The Plaza Real Estate injunction remains in effect. (See Defs.' Mem. at 5 n.7.)

**DISCUSSION**

Under New York law,[2]

> [a] notice of pendency may be filed in any action in a court of the state or of the United States in which the judgment demanded would affect the title to, or the possession, use or enjoyment of, real property, except in a summary proceeding brought to recover

---

[2] See Ulysses I & Co. v. Feldstein, No. 01 Civ. 3102, 2002 U.S. Dist. LEXIS 14541, at *53 (S.D.N.Y. Aug. 8, 2002) ("Pursuant to Rule 64 of the Federal Rules of Civil Procedure, I must look to state law to govern the matter of lis pendens."); see also id. at *54 n.10 ("This Court has the power to cancel Notices of Pendency.").

> the possession of real property. The pendency of such an action is constructive notice, from the time of filing of the notice only, to a purchaser from, or incumbrancer against, any defendant named in a notice of pendency indexed in a block index against a block in which property affected is situated or any defendant against whose name a notice of pendency is indexed. A person whose conveyance or incumbrance is recorded after the filing of the notice is bound by all proceedings taken in the action after such filing to the same extent as a party.

N.Y. C.P.L.R. § 6501. "This is an extraordinary privilege . . . ." Israelson v. Bradley, 127 N.E.2d 313, 315 (N.Y. 1955). "To counterbalance the ease with which a party may hinder another's right to transfer property, [New York law] require[s] strict compliance with the statutory procedural requirements." 5303 Realty Corp. v. O & Y Equity Corp., 476 N.E.2d 276, 281 (N.Y. 1984). I will analyze whether there has been "strict compliance" with respect to the first and third categories of properties, but first I will briefly address the second and fourth categories. I will then turn to two other arguments that plaintiff advances and the issue of attorneys' fees and costs.

### A. The Carmine Cuomo Properties

Plaintiff argues that two of the thirty lis pendens concern "properties currently 'owned' by defendant Carmine Cuomo . . . who has defaulted in this action, and has not moved to vacate the lis pendens," and accordingly that "[t]he Moving Defendants have no standing to vacate the notices of pendency filed against the Carmine Cuomo properties." (Pl.'s Mem. at 1 n.1.) At oral argument, defendants conceded they had no stake in either of those parcels. (See Transcript of Oral Argument, dated May 22, 2009 ("Tr."), at 3:8-4:5.) Accordingly, this order will not address the Carmine Cuomo properties.

### B. The Plaza Real Estate Parcels

Judge Vitaliano has ruled that "the Court will enjoin Plaza Real Estate from transferring or encumbering the Loring and Group Kappa properties while this litigation continues." 594 F. Supp. 2d at 332. Until and unless that injunction is lifted, there is no need to address the lis pendens on those properties. Consequently, I shall limit my order to the remaining twenty-two notices of pendency.

### C. The Selling Entities' Parcels

Although DLJ has filed an amended complaint since filing its notices of pendency (see Amended Complaint, dated Mar. 6, 2009), only the original complaint, which was filed with the lis pendens, pertains to this motion. 5303 Realty Corp., 476 N.E.2d at 281 ("[T]he complaint filed with the notice of pendency must be adequate unto itself; a subsequent, amended complaint cannot be used to justify an earlier notice of pendency."). At issue here is the statutory requirement that "the judgment demanded would affect the title to, or the possession, use or enjoyment of, real property."

Defendants contend that a complaint seeking only monetary damages cannot support a notice of pendency, because the requested relief would not directly affect real property. As a general matter, they are correct. E.g., United States v. Kramer, No. 06 CR 200, 2006 U.S. Dist. LEXIS 89034, at *33-34 (E.D.N.Y. Dec. 8, 2006) (Vitaliano, J.) ("[W]here a plaintiff's claim is, 'in essence only a money claim,' a notice of lis pendens is not proper at all." (quoting Long Island City Sav. & Loan Ass'n v. Gottlieb, 455 N.Y.S.2d 300, 301 (2d Dep't 1982))); Richard J. Zitz, Inc. v. Pereira, 965 F. Supp. 350, 356 (E.D.N.Y. 1997) ("It is well-established that an action for money damages will not entitle the plaintiff to a notice of pendency."); Rajic v. Sarokin, 625 N.Y.S.2d 94, 95 (2d Dep't 1995) (affirming cancellation of a notice of pendency

where "the plaintiff's complaint against the seller of the real property at issue sought only the return of her down payment and related damages"). See generally 5303 Realty Corp., 476 N.E.2d at 281-82 (expounding "the niceties of the distinction involved in applying the doctrine").

Applying that principle to the present case, defendants argue that the complaint seeks only monetary damages in connection with the properties owned by the Selling Entities' parcels, and that the twenty-one lis pendens associated with them are hence invalid. (Defs.' Mem. at 3.) Plaintiff responds that the pleadings, construed as a whole, seek not just monetary damages but also equitable relief. (See Pl.'s Mem. at 8-10; see also Compl. at 43 (requesting, in the final subpart of the ad damnum clause, that the court "award[] DLJ such other and further legal and equitable relief as the Court deems just and proper").) In particular, plaintiff asserts that "[w]here, as here, a plaintiff sufficiently alleges an unjust enrichment claim warranting the imposition of a constructive trust, the filing of a lis pendens is proper." (Pl.'s Mem. at 10; see also Compl. ¶¶ 117-120 (stating plaintiff's sixth claim for relief (unjust enrichment)).)

The New York Court of Appeals has instructed that:

> [t]he same considerations that require strict compliance with the procedural prerequisites also mandate a narrow interpretation in reviewing whether an action is one affecting "the title to, or the possession, use or enjoyment of, real property" (CPLR 6501). Thus, a court is not to investigate the underlying transaction in determining whether a complaint comes within the scope of CPLR 6501. Instead . . . the court's analysis is to be limited to the pleading's face.

5303 Realty Corp., 476 N.E.2d at 281. Defendants interpret this holding as requiring that the complaint contain "magic words" (see Tr. at 34:3-5) that "specifically describe the real property that they're claiming title to" (Tr. at 29:21-23). Although exacting, such a rule would not be

inconsistent with the principle that "the drastic impact of the notice of pendency authorized by CPLR 6501 requires a strict application of that statute." 5303 Realty Corp., 476 N.E.2d at 283. Several cases support defendants' interpretation. See, e.g., Tiger Riverdale, Inc. v. Tiger Dale, Inc., 849 N.Y.S.2d 242, 243 (1st Dep't 2008) ("The complaint for money damages does not even refer to the subject property in connection with the relief sought, and thus fails, on its face, to allege the direct relationship to real property required for a notice of pendency."); Rajic, 625 N.Y.S.2d at 95 ("A court is not to investigate the underlying transaction in determining whether a complaint comes within the scope of CPLR 6501. Instead, a court's analysis is to be limited to the face of the pleadings"). Under such a regime, the lis pendens on the Selling Entities' properties could not survive.

Several other decisions, however, have focused on the principle that "a pleading is to be construed to allege whatever can be fairly implied on any aspect of the facts." Nastasi v. Nastasi, 805 N.Y.S.2d 585, 590 (2d Dep't 2005). These courts have concluded that where the pleadings, read as a whole, state a claim for a constructive trust over real property, they can support notices of pendency even without uttering magic words. See, e.g., Sierra Rutile Ltd. v. Katz, No. 90 Civ. 4913, 1992 U.S. Dist. LEXIS 2134, at *2-5 (S.D.N.Y. Feb. 25, 1992); Am. Motor Club, Inc. v. Neu (In re Am. Motor Club, Inc.), 109 B.R. 595, 599 (Bankr. E.D.N.Y. 1990). See generally Florrie Young Roberts, The Propriety of a Lis Pendens in Constructive Trust Cases, 38 Seton Hall L. Rev. 213, 245 (2008) ("Simply put, it is illogical to allow a plaintiff's claim for a constructive trust to proceed and then defeat it by allowing the defendant to transfer the property away to a bona fide purchaser.").

But even under that more liberal standard, the complaint in this action would not

support a constructive trust over the Selling Entities' real property. "A constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee." Beatty v. Guggenheim Exploration Co., 122 N.E. 378, 380 (N.Y. 1919) (Cardozo, J.), superseded by statute on other grounds, N.Y. Gen. Oblig. Law § 15-301, as recognized in Israel v. Chabra, 12 N.Y.3d 158 (2009); see also Simonds v. Simonds, 380 N.E.2d 189, 194 (N.Y. 1978) ("[T]he purpose of the constructive trust is prevention of unjust enrichment."). "New York law requires four elements to prove a constructive trust: (1) a confidential or fiduciary relationship; (2) a promise, express or implied; (3) a transfer made in reliance on that promise; and (4) unjust enrichment." Ades & Berg Group Investors v. Breeden (In re Ades & Berg Group Investors), 550 F.3d 240, 245 (2d Cir. 2008) (per curiam).

Insofar as plaintiff seeks a constructive trust over defendant Coastal Capital Corporation ("Coastal Capital"), the court must deny its request. DLJ has conceded that a contract governed the relationship between it and Coastal Capital. (Tr. at 20:8-14.) Under New York law, "the existence of a written agreement precludes a finding of unjust enrichment [or a] constructive trust." Superintendent of Ins. v. Ochs (In re First Cent. Fin. Corp.), 377 F.3d 209, 213 (2d Cir. 2004).

With regard to the other defendants, as Judge Vitaliano aptly noted in a portion of his ruling addressing DLJ's ninth and eleventh claims for relief, "plaintiff altogether fails to plead the existence of a confidential or fiduciary relationship . . . ." 594 F. Supp. 2d at 329 (footnote omitted). Plaintiff urges the court to overlook this defect in its pleadings (which also

applies to its sixth claim for relief) and to find that its unjust enrichment cause of action (Compl. ¶¶ 117-120), read in conjunction with various other aspects of the pleadings, states a claim for a constructive trust. (See Pl.'s Mem. at 10-14, 18 n.8; see also Tr. at 19:8-20.) Plaintiff is correct that a confidential or fiduciary relationship is not a sine qua non of a constructive trust in New York. In re Koreag, Controle et Revision S.A., 961 F.2d 341, 353 (2d Cir. 1992) ("Although a fiduciary relationship is one of the factors cited by New York courts, the absence of any one factor will not itself defeat the imposition of a constructive trust when otherwise required by equity."); id. at 353-54 ("More relevant to the issue at hand . . . a person wrongfully acquiring property can be treated as a constructive trustee notwithstanding the lack of a fiduciary relationship."). But "the New York courts do insist upon . . . a showing that property is held under circumstances that render unconscionable and inequitable the continued holding of the property and that the remedy is essential to prevent unjust enrichment." Counihan v. Allstate Ins. Co., 194 F.3d 357, 361-62 (2d Cir. 1999). Moreover, "'under New York law, one who seeks to impose a constructive trust must establish the facts giving rise to that remedy by clear and convincing evidence.'" Miller v. Hartford Life Ins. Co., 64 F. App'x 795, 797 (2d Cir. 2003) (quoting Martha Graham Sch. & Dance Found., Inc. v. Martha Graham Ctr. of Contemporary Dance, Inc., 224 F. Supp. 2d 567, 610 (S.D.N.Y. 2002)); accord SEC v. Credit Bancorp, Ltd., 138 F. Supp. 2d 512, 541 (S.D.N.Y. 2001), rev'd on other grounds, 297 F.3d 127 (2d Cir. 2002). Here, plaintiff has not alleged facts in its complaint that, if proved by clear and convincing evidence, would demonstrate that equity requires the imposition of a constructive trust.

The equities in this case by no means favor defendants, but that does not necessarily entitle plaintiff to lis pendens. "In undertaking an analysis of the equities, as is

required in determining whether to impose an equitable remedy such as a constructive trust, the 'innocence' of the victim is a relevant consideration." Credit Bancorp, 138 F. Supp. 2d at 541; see also id. at 541 n.37 ("'Innocence' is used here to refer to the reasonableness of the customer's reliance."); cf. In re N.Y. Agency of Bank of Commerce & Credit Int'l S.A., 683 N.E.2d 756, 763 (N.Y. 1997) (finding that bank was not "an innocent victim" when it "knew or should have known" of the risks involved in transactions with a certain other bank). DLJ has not put forth factual allegations that would demonstrate that it was an innocent victim. Rather, plaintiff was a sophisticated purchaser of mortgages that bought from Coastal Capital "approximately 1,300 . . . loans" (Compl. ¶ 49), of which ninety-five, or more than seven percent, were "never recorded" (Compl. ¶ 45). In fact, according to DLJ, twenty-four of the ninety-five properties "cannot be located despite numerous public record searches" conducted after DLJ discovered the fraud. (See Compl. ¶¶ 54, 63(f).) While DLJ alleges that the moving defendants engaged in elaborate chicanery to lull it into a false sense of security, it is inescapable that "[t]he alleged scheme . . . assumed a failure of diligence by the purchaser—that is, the purchaser would not independently confirm recordation at the County Clerk's office." 594 F. Supp. 2d at 315 n.4.

Confirming recordation is a basic responsibility of purchasers of real estate or mortgages thereon; indeed, a core assumption underlying the lis pendens statute is that prospective buyers of real property (or their agents) check the County Clerk's records before completing a purchase. See, e.g., Roberts, supra, at 228-29. It is not beyond possibility that under some set of facts, it would be reasonable for a buyer of mortgages to rely on the representations of others that the mortgages were recorded. But plaintiff has alleged no such

facts. Instead, even if all the facts alleged in the complaint were taken to be true, DLJ could not establish by clear and convincing evidence—or by any other standard of proof—that it consulted public records to confirm the recordation of any of the mortgages it bought, or reasonably relied on others to do so on its behalf. Cf., e.g., Koslowski v. Koslowski, 747 N.Y.S.2d 583, 585 (2d Dep't 2002) (Feuerstein, J.) (declining to impose a constructive trust where "the plaintiff failed to present credible evidence sufficient to establish" various elements).

For all of the above reasons, I cannot conclude that the complaint sets forth a claim for a constructive trust over the Selling Entities' properties. Although "the likelihood of success on the merits is irrelevant to determining the validity of the notice of pendency," 5303 Realty Corp., 476 N.E.2d at 280, "if the underlying complaint [fails to] set[] forth a claim within the scope of C.P.L.R. 6501 . . . the court should cancel the notice," Diaz v. Paterson, 547 F.3d 88, 91 (2d Cir. 2008).

### D. The Glen Head House

The ninth claim for relief in the complaint seeks a constructive trust over the Glen Head House, as well as other properties not at issue on this motion. (See Compl. ¶¶ 128-131.) This claim is undermined by the same shortcoming as the sixth claim, i.e., it neither alleges a fiduciary relationship nor asserts facts that would support overlooking that defect.

### E. Fraudulent Conveyance and RICO Claims

Plaintiff further argues that its "fraudulent conveyance claim directly affects the title to, or the possession, use or enjoyment of the" properties at issue. (Pl.'s Mem. at 15.) That cause of action alleges that "Coastal Capital transferred the monies it received from DLJ, and other assets that it owned or had interests in, . . ., including, without limitation the Apergis

Mortgage . . . and possibly others . . . ." (Compl. ¶ 122.) To the extent that claim is for "monies," it does not support a lis pendens, for the reasons explained supra. As for the "Apergis Mortgage," the complaint defines that term as "a $500,000 mortgage from Coastal Capital" to A. Apergis that the latter used, along with cash, to purchase the Glen Head House (Compl. ¶ 64), and it asserts that "the monies Coastal Capital used to fund [the Apergis Mortgage] were monies that had been stolen from DLJ by and through the mortgage scam alleged herein" (Compl. ¶ 67). In short, this claim too is a claim about money, not real property in which DLJ asserts an interest. The unexplained allegation that "possibly other[]" property is at issue falls far short of supporting a notice of pendency.

Finally, plaintiff argues that its RICO claims support its lis pendens. (Pl.'s Mem. at 16-17; see also Compl. ¶¶ 85-97.) Insofar as the RICO claims seek money damages, they do not support lis pendens. DLJ contends that they also seek equitable relief, pursuant to 18 U.S.C. § 1964(a). (Pl.'s Mem. at 16.) Judge Vitaliano has already ruled in this case that injunctive relief is not available to private litigants under § 1964(a). (See Memorandum and Order, dated June 3, 2009, at 6.) I therefore must reject plaintiff's RICO justification for its notices of pendency.

### F. Attorneys' Fees and Costs

The moving defendants additionally request attorneys' fees and costs under N.Y. C.P.L.R. § 6514(c). (Defs.' Mem. at 6.) The availability of such relief turns on whether the court decides this motion under section 6514 or under its inherent powers to decide whether the lis pendens comply with the requirements of section 6501. See, e.g., Balaber-Strauss v. Murphy (In re Murphy), 331 B.R. 107, 133-34 (Bankr. S.D.N.Y. 2005); Nastasi, 805 N.Y.S.2d at 588-89.

This case does not involve faulty service of a summons, bad faith, or any of the other grounds enumerated in sections 6514(a)-(b). Rather, I make this ruling pursuant to the court's inherent powers. Accordingly, I must deny the motion for fees and costs. Congel v. Malfitano, 877 N.Y.S.2d 443, 446 (2d Dep't 2009).

## CONCLUSION

For all of the above reasons, the moving defendants' motion to vacate the notices of pendency are granted with respect to the Selling Entities' Properties and the Glen Head House. Upon the filing of a copy of this Memorandum and Order with the Kings County Clerk's Office, the above-mentioned twenty-two notices of pendency shall be canceled and be of no further effect. No fees or costs.

SO ORDERED.

Dated: Brooklyn, New York
June 4, 2009

_____
ROBERT M. LEVY
United States Magistrate Judge